UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
AT DAVENPORT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 21-cr-102 |
| vs. | ) **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| JESSICA ROCHELLE PETERS, | ) |
| Defendant. | ) |

COMES NOW Defendant Jessica Peters, by and through her attorneys Andrea D. Jaeger of Keegan, Tindal, & Jaeger, and for her Sentencing Memorandum and Motion for Downward Variance addressing the factors to be considered in imposing Defendant's sentence under 18 U.S.C. § 3553(a), states as follows:

### A. WITNESSES AND EXHIBITS

1. Defendant does not anticipate calling witnesses.

2. Defendant does not anticipate exhibits beyond any letters of support.

### B. OBJECTIONS TO THE PSR AND GUIDELINES ISSUES

3. Defendant withdraws her objection to repeat and dangerous sex offender against minors USSG § 4B1.5.

4. No objections or PSR issues remain outstanding.

### C. DEFENDANT'S CHARACTERISTICS AND "NEEDS" OF THE SENTENCE IMPOSED

5. Defendant respectfully requests the Court vary downward and suggests lengthy incarceration is not necessary to promote respect for the law, to afford adequate deterrence, or to protect the public. 18 U.S.C. § 3553(a)(2)(A)–(C). While Defendant recognizes incarceration is the eventual outcome of this sentencing hearing, the period of incarceration recommended by the

Guidelines is greater than necessary to do justice and to achieve the goals of sentencing. To the contrary, the totality of the circumstances, including the nature and circumstances of Defendant's background, suggest a downward variance is appropriate and sufficient to achieve the goals of sentencing. Rehabilitation is possible—particularly considering scientific research indicating an extremely low estimated rate of recidivism—and should be a primary goal in determining an appropriate disposition. 18 U.S.C. § 3553(a)(2)(B)–(C). Further, as detailed by more specifically by Judge Bennett in *Beiermann* and others, the Guidelines for sex offenses fail to reflect the Commission's role and fail to reflect the best resource for determining an appropriate sentence.

6. As noted and found by the U.S. Sentencing Commission:

   a. A sentence within Defendant's asserted Guideline range results in an "odd[ ] of recidivism [ ] approximately 29 percent lower [as an offender sentenced to more than 120 months incarceration] compared to a matched group of federal offenders receiving shorter sentences." U.S. Sentencing Commission, LENGTH OF INCARCERATION AND RECIDIVISM (2022), available at https://www.ussc.gov/research/research-reports/length-incarceration-and-recidivism-2022 (accessed March 18, 2025).

      i. Here, the length of Defendant's sentence indicates a lower rate of recidivism.

   b. "The typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography. Of the 512 child pornography production offenders sentenced in fiscal year 2019, 60.3 percent were related to or otherwise maintained a position of trust over the minor victim, whether through familial relationships or by virtue of the offender's role as

a teacher or a coach, for example." U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Production Offenses, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (accessed March 18, 2025).

      i. Here, such indicates the relationship between Defendant and her child fails to indicate an unusually aggravating circumstance compared to comparable offenses and similarly situated offenders.

  c. "The vast majority of fiscal year 2019 child pornography production offenders (80.9%) were sentenced for an offense that involved sexual contact of a minor." *Id.*

      i. Here, such indicates the circumstances of the offense are not atypical or significantly more aggravating when compared to comparable offenses and similarly situated offenders.

7. Offenses of this nature incite an emotional reaction. Rightly or wrongly, these crimes are viewed as repulsive and immoral. Even the U.S. Supreme Court and Iowa Supreme Court have fallen victim to repeated misconceptions concerning sex offenses. In 2005, the Iowa Supreme Court dealt with an issue of first impression, the residency restrictions placed upon sex offenders. *See State v. Seering*, 701 N.W.2d 655, 664 (Iowa 2005). Upholding the restrictions, the court gave a nod to the hardships the restrictions placed on Keith Seering and his family, who had limited financial resources. But Seering's constitutional arguments were rejected because "the risk of recidivism posed by sex offenders is 'frightening and high,'" as "numerous authorities have acknowledged." The only authority cited for the judicial finding was Justice Kennedy's opinion in *Smith v. Doe*, 538 U.S. 84 (2003). Justice Kennedy's first statement on these issues arose in *McKune v. Lile*, 536 U.S. 24, 34 (2002), in which Justice Kennedy wrote the recidivism rate "of

untreated offenders has been estimated to be as high as 80%." He further described such recidivism as "frightening and high." *McKune*, 536 U.S. at 34. In 2015, Professors Ira Ellman and Tara Ellman published "'Frightening and High' the Supreme Court's Crucial Mistake About Sex Crime Statistics." Constitutional Commentary, Vol. 30: 495. The article forensically examines the sources of Justice Kennedy's recidivism findings, which have risen to accepted judicial fact. Professor Ellman found the oft cited statistic was not a statistic at all. Rather, it was a bare assertion by a counselor in Oregon who ran a sex offender treatment program.

> He is a counselor, not a scholar of sex crimes or re-offense rates, and the cited article is not about recidivism statistics. It's about a counseling program for sex offenders he then ran in an Oregon prison. His unsupported assertion about the recidivism rate for untreated sex offenders was offered to contrast with his equally unsupported assertion about the lower recidivism rate for those who complete his program.

*Id.* at 498.

8. Regardless of the validity of one's emotional reaction, sentencing is premised upon goals of rehabilitation in addition to mere retribution and punishment. Toward this end, sentences are to be tied out to specific goals and premised upon scientific research and logic. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); *Kimbrough v. United States*, 552 U.S. 85 (2007) (Commission's usual practice was to develop Guideline sentences "using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports."). Examining research related to sex offenders, however, provides information contrary to the emotional reaction: sex offenders, like Defendant here, have exceptionally low recidivism rates. Further, the Guidelines for sex offense cases "[do] not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis, but was the result of congressional mandates, often passed by Congress with

little debate or analysis." *U.S. v. Beiermann*, 599 F.Supp.2d 1087, 1100–04 (N.D. Iowa 2009) (J. Bennett) (collecting cases) ("I join my brethren who find that the child pornography guideline, U.S.S.G. § 2G2.2, which is the result of congressional mandates, is entitled to considerably less deference than other guidelines that *are* based on the Commission's exercise of its institutional expertise and empirical analysis. Perhaps in somewhat of a rush to appease the public's and politicians' noted and continued zeal for harsher sentences in child pornography cases, many courts have claimed that harsher sentences in child pornography cases will somehow reduce both the demand for and availability of child pornography on the Internet. I wish it were that simple. … While the public's outcry for harsher sentences in child pornography cases is certainly understandable, there is not a single sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the internet. From the rapid growth of these cases that my colleagues around the country and I are seeing, we cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet. This does not mean that [defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or course that I am aware of. … I find that U.S.S.G. § 2G2.2 should be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case."). Because the Guideline applicable for this offense fails to reflect the Commission's role and fails to adequately take into account scientific research and goals of sentencing, variance is appropriate.

9. The problems associated with CP Guidelines, and resulting overstatement of offense and likelihood of recidivism, is best exemplified by close examination of the use of a computer Guideline in particular. Guideline § 2G2.2(b)(6) provides a two-level enhancement "[i]f the offense involved the use of a computer of an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material…." USSG § 2G2.2(b)(6). Section 2G2.2, as a whole, is utilized for "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; [and] Possessing Material Involving the Sexual Exploitation of a Minor." USSG § 2G2.2. As the Court knows, this has been repeatedly applied by this and other courts, and repeatedly upheld by the 8th Circuit, while defendants repeatedly call for downward variance or other forms of relief. In a world where a cell phone, a car, a doorbell, a camera, a light switch, a thermostat, a microwave, and a seemingly infinite list of other objects is a "computer" within the scope of the Guidelines, it is difficult to imagine how an offense falling within the scope of § 2G2.2 could be utilized *without* a computer. To do so, it would seem individuals would be required to physically hand each other a literal scrapbook of child pornography, but this example is seemingly so outlandish in today's technological world, it feels somewhat comical or quaint. Moreover, even under such a hypothetical, one would have to question where the individuals obtained the CP to fill the supposed scrapbook. From a photographer's camera? Well, that would be a computer. From a cell phone camera? Again, computer. A polaroid?[1] Computer. Copying machine from some other unknown source that somehow does not qualify as a computer? Still a computer. Nicephore Niepce's 1816

---

[1] Polaroid, incidentally, is a brand—this would more appropriately be called an "instant camera."

camera?  Computer!² Having apparently exhausted all available means of producing a still or moving image, one would seemingly need to draw out the supposed CP, which of course would make it no longer CP.

10. Enhancements are intended to be that: enhancements.  As such, enhancements should apply when there is some atypical factor, usually aggravating, that is outside the norm, average, or run of the mill case.  If a factor is no longer that—an atypical consideration not typically otherwise found in similar cases—it should no longer be an enhancement (it should be the base) and the enhancement no longer serves its intended purpose.  Continuing with this Guideline example, it is not the simple use of a computer, which would include the basic technology now found in all cell phones and vehicles (thermostats, doorbells, cameras…) and which appears to apply to every single offense under § 2G2.2, which itself makes some criminal activity more inherently evil or dangerous.  *See, e.g.*, *U.S. v. Kramer*, 631 F.3d 900 (8th Cir. 2011) (cellphone constitutes a computer and the comparable enhancement under § 2G1.3(b)(3) applies); *cf. Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (finding statute prohibiting sex offender from accessing social media sites violated the First Amendment and, in doing so, discussing the importance of the internet in today's world).  Application of the enhancement overstates the seriousness of the offense, unduly penalizes offenders without basis in today's world, fails to accurately reflect the likelihood of recidivism, and constitutes double counting with an enhancement that swallows the rule.

---

² "the term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." 18 U.S.C. § 1030(e)(1) (referenced by USSG § 2G2.1 (application note 1)).

11. Other courts have acknowledged application of an enhancement for use of a computer makes very little sense in child pornography cases. *See, e.g., Beiermann*, 599 F. Supp. 2d at 1104–07 (collecting cases and authorities regarding USSG § 2G2.2, discussing the abandonment of the Commission's empirical analysis in child pornography cases, finding a categorical policy disagreement with the Guideline, and noting, in particular, the use of a computer enhancement, like virtually all the enhancements, impermissibly and illogically skews sentences even for "average" defendants to the upper end of the statutory range, regardless of other considerations, and fails to serve its stated purpose, which failure itself has been noted by the Commission). Stated otherwise, the purpose of a sentencing enhancement is to reflect the seriousness of aggravated facts which make the act more dangerous or harmful than the "baseline" case established by a particular base offense level. But, an "ordinary" child pornography case involves the use of computers, because that is how humans communicate with each other and that is how one possesses child pornography: this enhancement "thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment." *Id.* at 1105.

12. Of course, the computer enhancement is only one; the overarching problems with CP Guidelines this enhancement illustrates apply to others as well. Application of the Guideline enhancement, like the Guideline as a whole, overstates the seriousness of Defendant's offense and results in an unreasonable sentence, warranting a variance.

13. Certainly, punishment is a valid sentencing consideration and sentencing justification. Respectfully, however, Defendant suggests punishment is only one sentencing goal and rehabilitation is a more important sentencing justification.

14. As this Court is well aware, the Court can sentence below the Guidelines based solely upon policy disagreements with the Guidelines. *See e.g. Spears v. U.S.*, 555 U.S. 261, 263–67 (2009) (*per curiam*); *U.S. v. Kimbrough*, 552 U.S. 85, 109–110 (2007). "In Kimbrough the Supreme Court held that it is not an abuse of discretion for a district court to vary from the Guidelines based on its policy disagreement concerning the disparity between crack and powder cocaine sentences." *U.S. v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009). The United States Supreme Court has permitted trial courts to reject the guidelines on categorical policy grounds. Stated differently, there is no need for the sentencing court to make an individualized determination an excessive sentence is yielded in a particular case. *U.S. v. Beiermann*, 599 F.Supp. 2d 1087 (citing *Spears*, 555 U.S. at 262).

15. Here, the problems with CP Guidelines remain relevant sentencing considerations. Reliance on the CP Guidelines results in an unduly harsh sentence. Even the Commission has apparently acknowledged the problems with its own Guidelines. Therefore, a variance below Defendant's suggested Guideline calculation is warranted, particularly when the Court notes Defendant's other personal characteristics and background, such as her lack of significant criminal history, her family and community support, her prosocial interests and connections, her history of gainful employment, and her genuine remorse, which will be addressed more fully at sentencing hearing.

### D. CONCLUSION

WHEREFORE Defendant respectfully requests she be sentenced in accordance with the foregoing.

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal & Jaeger
2322 E. Kimberly Rd. Ste. 140S
Davenport, Iowa 52807
Telephone: 563-355-6060/319-887-6900
Facsimile: 563-355-6666/319-688-2754
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

**Certificate of Service**

The undersigned certifies that the foregoing instrument was electronically filed on March 18, 2025, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Andrea D. Jaeger*